IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL MORAN | ) | CASE NO. |
| 3617 Bellevue Rd | ) | |
| Toledo, Ohio 43613 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| ADIENT US, LLC | ) | |
| 7560 Arbor Drive | ) | **JURY DEMAND ENDORSED** |
| Northwood, Ohio 43619 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| Adient US, LLC | ) | |
| c/o CT Corporation System | ) | |
| 4400 Easton Commons Way, Suite 125 | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Daniel Moran, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

## PARTIES

1.  Moran is a resident of the City of Toledo, County of Lucas, State of Ohio.

2.  Adient US, LLC (hereinafter "Adient") is a foreign corporation that operated a business located

    at 7560 Arbor Drive, Northwood, Ohio 43619.

3.  Adient was at all times hereinafter mentioned an employer within the meaning of R.C.

    § 4112.01 *et seq.*

4.  Adient was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C.

    126 § 12101 *et seq.*

## JURISDICTION & VENUE

5.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Moran is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq.*

6.  All material events alleged in this Complaint occurred in County of Lucas.

7.  This Court has supplemental jurisdiction over Moran's state law claims pursuant to 28 U.S.C. § 1367 as Moran's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9.  Within 300 days of the conduct alleged below, Moran filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-01223 against Adient.

10. On or about March 17, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Moran regarding the Charges of Discrimination brought by Moran against Adient in EEOC Agency Charge No. 532-2021-01223.

11. Moran received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

12. Moran has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Moran has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

14. Moran is a former employee of Adient.

2

15. Moran began working for Adient on or around May 18, 2020.

16. Adient employed Moran as a Production Supervisor.

17. Moran had a strong history of performance with Adient.

18. Moran did not have any history of meaningful discipline.

19. Grant McCauley was Moran's immediate supervisor.

20. McCauley worked for Adient as a Production Superintendent.

21. During all material events asserted herein, McCauley has and/or had authority to hire, fire, and/or discipline employees.

22. McCauley did not participate in the decision to hire Moran.

23.  At the time Moran began working at Adient, he was also a student.

24. Adient was aware that Moran was also a student.

25. Because of Moran's student status, he informed Adient and his supervisors that he had courses 2 days a week and could not work more than his scheduled 5 days/45 hours per week.

26. In or about June 2020, McCauley began scheduling Moran 6-7 days per week.

27. In or around August 2020, Moran began experiencing pain in his foot.

28. As a result of his foot pain, Moran saw a physician on or about August 17, 2020.

29. At his doctor's appointment August 17, the doctor informed Moran he had a fractured left foot.

30. As a result of his foot fracture, the doctor told Moran he could return to work with restrictions. ("Work Restrictions").

31. As a result of his foot fracture, Moran was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq.*

32. As a result of his foot fracture, Moran was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

3

33. Alternatively, Adient perceived Moran to be disabled.

34. Moran's Work Restrictions included wearing a walking boot to help his fracture heal.

35. Moran informed McCauley of his disability, and of his Work Restrictions.

36. Moran's disability substantially impaired one or more of his major life activities, including working.

37. Despite this actual or perceived disabling condition, Moran was still able to perform the essential functions of his job with reasonable accommodations.

38. On or about August 23, 2020, McCauley informed Moran he could not come in to work with the walking boot on.

39. McCauley did not engage in an interactive discussion with Moran to determine reasonable accommodations.

40. By prohibiting Moran from coming to work with his walking boot, McCauley failed to reasonably accommodate Moran's disability.

41. McCauley did not prohibit non-disabled employees from coming to work.

42. Alternatively, McCauley did not prohibit employees he did not perceive to be disabled from coming to work.

43. McCauley prohibited Moran from coming to work with his walking boot because of his disability.

44. Alternatively, McCauley prohibited Moran from coming to work with his walking boot because he perceived Moran to be disabled.

45. Because McCauley prohibited Moran from coming to work with his walking boot, Moran applied for short-term disability leave.

46. Moran was approved for and took five weeks of short-term disability leave.

4

47. Moran returned to work on or about September 28, 2020.

48. At the time Moran returned to work, he was still experiencing significant foot pain.

49. When Moran returned to work, he was unable to run due to his foot recovering.

50. On several occasions after Moran returned to work, McCauley and other employees harassed Moran for "moving too slowly" and not being able to run.

51. Moran again informed McCauley he was in school, and so he intended to work a scheduled 5 days per week with no overtime instead of 6-7 days per week.

52. McCauley denied Moran's scheduling request and told him "we don't have scheduled days."

53. McCauley allowed non-disabled similarly situated employees to work scheduled days with two days off per week.

54. Moran pointed out to McCauley that other supervisors utilized regular schedules.

55. Moran complained McCauley was treating his disparately from other employees based on his disability ("Moran's Discrimination Complaint").

56. Upon information and belief, Defendant has a policy requiring investigations following receipt of a complaint of discrimination.

57. An investigation should include interviewing the complainant.

58. An investigation should include interviewing the subject of the complaint.

59. An investigation should include interviewing the subject of the reported incident.

60. An investigation should include interviewing witnesses to the reported incident.

61. An investigation should include getting a written statement from the complainant.

62. An investigation should include getting a written statement from the subject of the complaint.

63. An investigation should include getting a written statement from the subject of the reported incident.

5

64. In response to Moran's Discrimination Complaint, Adient did not get a written statement from McCauley.

65. In response to Moran's Discrimination Complaint, Adient did not get a written statement from Moran.

66. In response to Moran's Discrimination Complaint, Adient did not get a written statement from any witnesses.

67. In response to Moran's Discrimination Complaint, Adient did not interview McCauley.

68. In response to Moran's Discrimination Complaint, Adient did not interview Moran.

69. In response to Moran's Discrimination Complaint, Adient did not interview any witnesses.

70. In response to Moran's Discrimination Complaint, Adient did not take corrective action against McCauley.

71. Similarly, it is well settled that an employer's failure to investigate, or take prompt remedial action against discrimination, thus allowing the discrimination to continue, is also an adverse employment action. *Ellis v. Jungle Jim's Mkt., Inc.*, 12th Dist. No. CA2014-12-254, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 39.

72. Adient ratified McCauley's discriminatory conduct in failing to conduct an investigation into Moran's Discrimination Complaint.

73. Adient ratified McCauley's discriminatory conduct in failing to discipline McCauley following Moran's Discrimination Complaint.

74. In response to Moran's Discrimination Complaint, McCauley told Moran "you had five weeks off, you don't need any more time off."

75. McCauley continued scheduling Moran 6-7 days per week.

76. McCauley continued scheduling Moran 6-7 days per week to discriminate against Moran's disability.

77. On or about October 27, 2020, Moran again requested for scheduled days off to ensure he worked a five day week with no assigned overtime ("October 27 Request").

78. At the time of his October 27 Request, Moran needed the time off to rest his foot due to his disability, and for his school.

79. In his October 27 Request, Moran requested to not work on Wednesdays and Thursdays.

80. Other similarly-situated non-disabled supervisors had scheduled days off and chose which two days off they had each week.

81. McCauley refused Moran's October 27 Request.

82. McCauley again told Moran he did not need any more time off.

83. On or about November 3, 2020, Adient terminated Moran's employment.

84. Adient terminated Moran's employment because he was disabled.

85. Alternatively, Adient terminated Moran's employment because it perceived Moran to be disabled.

86. Moran was informed the reason for the termination was "performance-based" but no further information was provided.

87. Adient's purported reason for termination is pretext for disability discrimination.

88. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

89. Defendant has used the Progressive Discipline Policy when disciplining non-disabled employees.

90. Defendant has used the Progressive Discipline Policy when disciplining employees who have not complained of discrimination.

91. Under the Progressive Discipline Policy, Moran had not received any meaningful discipline.

92. Under the Progressive Discipline Policy, Moran had not received any verbal warnings.

93. Under the Progressive Discipline Policy, Moran had not received any written warnings.

94. Under the Progressive Discipline Policy, Moran had not been suspended.

95. Defendant skipped steps under the Progressive Discipline Policy when it terminated Moran's employment.

96. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

97. Skipping steps under the Progressive Discipline Policy is an adverse action.

98. Terminating Moran's employment was an adverse employment action.

99. Terminating Moran's employment was an adverse action.

100. Defendant knowingly skipped steps under the Progressive Discipline Policy when it terminated Moran's employment.

101. Defendant intentionally skipped steps under the Progressive Discipline Policy when it terminated Moran's employment.

102. Defendant willfully skipped steps under the Progressive Discipline Policy when it terminated Moran's employment.

103. Defendant knowingly committed an adverse employment action against Moran.

104. Defendant intentionally committed an adverse employment action against Moran.

105. Defendant willfully committed an adverse employment action against Moran.

106. Defendant knowingly committed an adverse action against Moran.

107. Defendant intentionally committed an adverse action against Moran.

108. Defendant willfully committed an adverse action against Moran.

109. Defendant knowingly terminated Moran employment.

110. Defendant intentionally terminated Moran's employment.

111. Defendant willfully terminated Moran's employment.

112. The above facts demonstrate Defendant engaged in a pattern and practice of disability discrimination.

113. The above facts demonstrate Defendant engaged in a pattern and practice of retaliation.

114. There was a causal connection between Moran's disability and Defendant's termination of Moran's employment.

115. There was a causal connection between Moran's Discrimination Complaint and Defendant's termination of Moran's employment.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. 126 § 12101 *et seq.*

116. Moran restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

117. Moran suffered from an injury to his foot.

118. As a result of his fractured foot, Moran was disabled starting in or around August 2020 until the end of his employment.

119. In the alternative, Defendant perceived Moran as being disabled.

120. Moran's condition constituted a physical impairment.

121. Moran's condition substantially impaired one or more of his major life activities including working.

122. Defendant treated Moran differently than other similarly-situated employees based on his disabling condition.

123. Alternatively, Defendant treated Moran differently than other similarly-situated employees based on his perceived disabling condition.

9

124. On or about November 3, 2020, Defendant terminated Moran's employment without just cause.

125. Defendant terminated Moran's employment based his disability.

126. Alternatively, Defendant terminated Moran's employment based his perceived disability.

127. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discharging Moran based on his disability.

128. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discharging Moran based on his perceived disability.

129. Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Moran based on his disabling condition.

130. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Moran based on his perceived disabling condition.

131. Moran suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

132. As a direct and proximate result of Defendant's conduct, Moran suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. §4112.01 *et seq.*

133. Moran restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Moran suffered from an injury to his foot.

135. As a result of his fractured foot, Moran was disabled starting in or around August 2020 until the end of his employment.

136. In the alternative, Defendant perceived Moran as being disabled.

137. Moran's condition constituted a physical impairment.

138. Moran's condition substantially impaired one or more of his major life activities including working.

139. Defendant treated Moran differently than other similarly-situated employees based on his disabling condition.

140. Defendant treated Moran differently than other similarly-situated employees based on his perceived disabling condition.

141. On or about November 3, 2020, Defendant terminated Moran's employment without just cause.

142. Defendant terminated Moran's employment based his disability.

143. Alternatively, Defendant terminated Moran's employment based his perceived disability.

144. Defendant violated R.C. §4112.02 when it discharged Moran based on his disability.

145. Alternatively, Defendant violated R.C. §4112.02 when it discharged Moran based on his perceived disability.

146. Defendant violated R.C. §4112.02 when it discriminated against Moran based on his disabling condition.

147. Alternatively, Defendant violated R.C. §4112.02 when it discriminated against Moran based on his perceived disabling condition.

148. Moran suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

149. As a direct and proximate result of Defendant's conduct, Moran suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: FAILURE TO ACCOMODATE UNDER THE AMERICANS WITH DISABILITY ACT

150. Moran informed Adient of his disabling condition.

151. Moran requested accommodations from Adient to assist with his disabilities including wearing a walking boot and having scheduled days off.

152. Moran's requested accommodations were reasonable.

153. There was an accommodation available that would have been effective and would have not posed an undue hardship to Adient.

154. Adient failed to engage in the interactive process of determining whether Moran needed an accommodation.

155. Adient failed to provide an accommodation.

156. Adient violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

157. As a direct and proximate result of Adient's conduct, Moran suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: FAILURE TO ACCOMODATE UNDER O.R.C. 4112.01 *et seq.*

158. Moran informed Defendant of his disabling condition.

159. Moran requested accommodations from Defendant to assist with his disabilities including moving to a different location.

160. Moran's requested accommodations were reasonable.

161. There was an accommodation available that would have been effective and would have not posed an undue hardship to Adient.

162. Defendant failed to engage in the interactive process of determining whether Moran needed an accommodation.

163. Defendant failed to provide an accommodation.

164. Defendant violated R.C. §4112.02 by failing to provide Moran a reasonable accommodation.

165.  Moran suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

166.  As a direct and proximate result of Defendant' conduct, Moran suffered and will continue to suffer damages, including economic and emotional distress damages.

## <u>COUNT V:  RETALIATION IN VIOLATION OF 42 U.S.C. 126 § 12101 *et seq.*</u>

167.  Moran restates each and every prior paragraph of this complaint, as if it were fully restated herein.

168.  As a result of Defendant's discriminatory conduct described above, Moran complained about the disability discrimination he was experiencing.

169.  Subsequent to Moran's complaint of disability discrimination, Moran suffered continuing discrimination.

170.  Subsequent to Moran's complaint of disability discrimination, Defendant did not conduct an investigation into his complaint.

171.  Subsequent to Moran's complaint of disability discrimination, Defendant did not take corrective action regarding his complaints.

172.  Subsequent to Moran's complaint of disability discrimination, Defendant ratified the discrimination Moran experienced.

173.  Subsequent to Moran's complaint of disability discrimination, Defendant did not allow Moran to take scheduled days off per week.

174.  Subsequent to Moran's complaint of disability discrimination, Defendant discharged Moran's employment.

175.  Defendant's actions were retaliatory in nature based on Moran's opposition to the unlawful discriminatory conduct.

176. Pursuant to 42 U.S.C. 126 § 12101 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory conduct.

177. Moran suffered emotional distress as a result of Defendant's conduct, and is entitled to emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

178. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Moran's employment, he suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VI: RETALIATION IN VIOLATION OF R.C. §4112.01 *et seq.***

179. Moran restates each and every prior paragraph of this complaint, as if it were fully restated herein.

180. As a result of the Defendant's discriminatory conduct described above, Moran complained about the disability discrimination he was experiencing.

181. Subsequent to Moran's complaint of disability discrimination, Moran suffered continuing discrimination.

182. Subsequent to Moran's complaint of disability discrimination, Defendant did not conduct an investigation into his complaint.

183. Subsequent to Moran's complaint of disability discrimination, Defendant did not take corrective action regarding his complaints.

184. Subsequent to Moran's complaint of disability discrimination, Defendant ratified the discrimination Moran experienced.

185. Subsequent to Moran's complaint of disability discrimination, Defendant did not allow Moran to take scheduled days off per week.

14

186. Subsequent to Moran's complaint of disability discrimination, Defendant discharged Moran's employment.

187. Defendant's actions were retaliatory in nature based on Moran 's opposition to the unlawful discriminatory conduct.

188. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

189. Moran suffered emotional distress as a result of Defendant' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

190. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Moran, he suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Moran demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Moran to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant for compensatory and monetary damages to compensate Moran for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Moran's claims as allowable under law;

(e)  An award of the taxable costs of this action; and

(f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Fred M. Bean
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email:  fred.bean@spitzlawfirm.com
        taurean.shattuck@spitzlawfirm.com

*Attorneys For Plaintiff*

16

## **JURY DEMAND**

Plaintiff Daniel Moran demands a trial by jury by the maximum number of jurors permitted.

/s/ Fred M. Bean
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)